## County of Pulaski *vs.* Irvin.

4    473
f33   430

The provision in the constitution of this State, that the county courts shall have jurisdiction in all matters relating to county taxes, disbursements of money for county purposes, and in every other purpose that may be necessary to the internal improvement and local concerns of their respective counties, does not confer on those tribunals the power of *taxation* and *disbursement,* without legislative action.

And section 205, of the chapter on Criminal Proceedings, in the Revised Statutes, providing that each county shall pay the costs of criminal proceedings had within it, is imperative on the county courts, and they have no discretion but to obey it.

The county in which a prosecution is commenced, though a change of venue is afterwards obtained, is liable for all the costs.

On certiorari to the county court, the circuit court can only quash or affirm.*

THIS was a case brought into the Pulaski Circuit Court, by certiorari, and there determined, in March, 1840, before the Hon. CHARLES CALDWELL, one of the circuit judges. *Miller Irvin* exhibited, in the county court of the county of Pulaski, a demand for the sum of

*Judge DICKINSON held, that the great principle, in reference to which the constitution must be construed, is the *separation* and *division* of the powers of the government among the different departments : that the clause giving jurisdiction to the county courts, must be considered by, and in reference to, this leading principle ; and the authority given that court must yield to, and be restricted by, this principle, unless its exercise is in accordance with the true object of the convention, and even if the clauses in the constitution were in direct contradiction to each other : that under our system of government, the power of *taxation* naturally belongs to the *legislative* department of the State, not to be exerted partially, or in local districts, but through the agency and sovereignty of the State, by uniform and impartial laws : that it is to be presumed that the State has not delegated the power of taxation to any other department than the Legislature, unless the grant in the constitution is so express and imperative as to forbid the idea that she intended to reserve this privilege solely to herself: that the grant of power to the county courts is not so express as to compel any such conclusion, for upon a proper construction of the grant, even standing alone, the Legislature must first define the objects on which the jurisdiction of the county courts is to be exercised,

$459 04, for compensation and fees for services rendered by him, as sheriff of Phillips county, in the case of the State of Arkansas against *David F. Douglass,* prosecuted for murder, upon an indictment returned into the circuit court of the county of Pulaski, in which the offence was alleged to have been committed, but which was removed for trial, by change of venue, to the circuit court of Phillips county.

The evidence adduced before the county court, in support of the demand, consisted of a duly certified transcript of the following order of the circuit court of Phillips county: "This day comes Miller Irvin, sheriff of the county of Phillips, and presents his account for moneys due, as sheriff, in the case of *The State vs. David F. Douglass,* in which

draw the line of distinction between general and local concerns, point out the internal improvements of the county, as contradistinguished from those of the State, and determine for what purposes county taxes may be assessed, the *amount, mode,* and *manner, of taxation,* and the purposes for which the moneys raised may be disbursed.

He held further, that the county courts could not act on the subjects of taxation or disbursement, without previous legislative action, for that it would be an exercise of legislative power : that the constitution gives them no legislative power, but regards them as *courts :* that they are political and corporate bodies, *to be controlled and regu-* lated in their discretion by the acts of the General Assembly, and not as independent of, and superior to it.

Judge LACY held, that to the fundamental provision in the constitution, as to the division of power, and its distribution among the departments, all the minor parts of the constitution must yield : that the whole structure of our political fabric was reared upon the principle, and rests upon the foundation, that the power of taxation belongs peculiarly and exclusively to the representatives of the people : that it is, in its essence and character, a *legislative* and not a *judicial* power, and cannot, in the nature of things, appertain or be assigned to judicial functions, with reason or justice : that this principle constitutes a governing rule in construing the constitution ; and that, if there is any doubt or difficulty in ascertaining the precise boundaries of the departments, the design and objects of the separate jurisdictions must be inquired into, and the authority assigned to each, which the general scope and design of the system warrants : that a constitution is not to be construed, or its meaning ascertained, like an ordinary grant or deed, but it is a charter of great political rights and powers, and its spirit and meaning to be sought for and found, in the *principles* it ordains and establishes : that as the *power of taxation* belongs, as *matter* of right and principle, to the legislative department, it must remain there, unless the constitution has given a part of it to another department, by express grant or imperative implication : that no part of it could be, or is, conferred on the county courts, by mere ambiguous and uncertain terms, nor is conferred by the constitution : that the county courts are made *judicial* tribunals by the constitution, and a part of the judiciary department; and that when the constitution, in regard to them, uses the word *jurisdiction,* it must be restricted to the kind and quantum of jurisdiction that belongs to them *as courts.* He held, further, that the meaning of a legal or judicial jurisdiction, appertaining to a particular class of *cases,* means that the sovereign power of the State may prescribe a rule of action for that jurisdiction, and that the county courts must act in conformity to its authority : that the language of the constitution is too loose and vague to be taken as a grant of legislative power, or as conferring any other powers on the county courts than such as they can exercise as *judicial* tribunals : that construed by this rule, the terms become sufficiently certain, as far as their judicial powers and jurisdiction are concerned, and indicate to the Legislature what powers may be exercised by the county courts, and the necessity that would devolve on the General Assembly, of creating laws and regulations by which that jurisdiction might be exercised : that all inferior magistrates and corporate

there was a change of venue from the county of Pulaski to the county of Phillips, amounting to the sum of four hundred and fifty-nine dollars and four cents; which account, being proven to the satisfaction of the court, is audited, allowed, and ordered to be certified to the county court of Pulaski county; and the said court is hereby directed to pay the same."

Upon the hearing of the case, the county court decided, that the county of Pulaski was under no legal obligation to pay the expenses of that prosecution, accruing after the change of venue; refused any order for the payment of the demand; and adjudged " that the said Miller Irvin take nothing by his motion, or suit, and that the county

bodies, must, as a fundamental axiom in the science of government, be subject to the sovereign will, and subordinate to the welfare of the whole, whereof they form a part : that there is in the Legislature a necessary and indispensable power to provide for the common defence, the common welfare, and the common benefit and improvement, of the State, as one great whole, and, consequently, to provide for an ample exercise of public justice throughout the State, in the exercise of which powers, the constituent parts of the body cannot interfere; and that if its exercise imposes charges on a county, or creates the necessity for county taxes, this is a mere *result* that flows from the exercise of an indisputable power : that if the Legislature cannot interfere with county charges, or create county taxes, they cannot legislate for the common good, compel each county to keep and maintain good roads, or erect suitable buildings for purposes of justice.

The CHIEF JUSTICE held, that that clause in the constitution confides to the county courts the direction and control *of all matters* affecting only, or principally, the interests of those residing in the county, in regard to which they possess the power of adjudicating every question that may arise : that for this purpose, they are the authorized agents of the inhabitants of the county, and the only organ by or through which their will, upon such subjects, can be legitimately made known, and their common interests provided for ; and that their powers, in these respects, are plenary, and only subject to control by the circuit and supreme courts. He held, further, that *county* taxes could only be collected and disbursed for *county* purposes : that the county courts *alone* have the power of appropriating or disbursing the moneys so collected : that the *county court*, and not the Legislature, has the power to determine whether any particular object, the prosecution of which requires an expenditure of money, belongs to the class of objects which are local to the county : that if the county court has this power, the Legislature *cannot* have it : that the county court *alone* has the power to designate the objects for which county moneys are to be disbursed ; and that there is no repugnancy between the grant of power to them, so construed, and any other part of the constitution. He further held, that the expenses of criminal prosecutions are not local to any county, or matters of county concern, and therefore, as to paying such expenses, no county court could have any jurisdiction : that the object of the constitution was, as appears from its language, to confer upon the officers of one department, *in more than one instance*, the exercise of powers, which, by the general distribution of power, would belong to another department : that unless the county courts have some *legislative* powers, this has not been done, because the only other instance is the power of the Senate to try impeachments : that the constitutional provisions in regard to *revenue*, apply exclusively to the *State* revenue, and have no relation or application to the levying of county taxes, or the appropriation or disbursement of money for county purposes : that the word *jurisdiction*, used in the constitution in regard to the county courts, has merely its ordinary meaning of *a power to determine or decide*, and is not confined to *judicial* jurisdiction. He also held, that his construction conferred on the county courts no legislative power, though, if it did, it might be exercised.

of Pulaski have and recover of the said Miller Irvin all the costs herein expended." To be relieved in the premises, Irvin then caused the proceedings of the county court to be brought before the circuit court of Pulaski county, by writ of certiorari; the return to which exhibited the facts, as above stated. Upon the matter being thus brought before the circuit court, it was agreed, between the parties, and their agreement, by leave of the court, entered of record, " that all manner of exception to the writ of certiorari, in this case, be, and the same are hereby, waived, and it is admitted, by both the parties, and ordered to be made a part of the record, that the indictment, in the name of the *State vs. David F. Douglass*, for the murder of William C. Howell, was found in the county of Pulaski, and removed, by change of venue, to the county of Phillips, for trial, and disposed of, in that court, by nolle prosequi." The circuit court, on the hearing of the case thus presented, decided that the county of Pulaski was legally bound to pay the cost and expenses incident to the prosecution, and adjudged, " that the county court of the county of Pulaski do allow, and order to be paid, to the said Miller Irvin, sheriff of the county of Phillips, the said sum of four hundred and fifty-nine dollars and four cents, certified by the circuit court of Phillips county to be due him, as sheriff, in the case in which there was a change of venue from the county of Pulaski to the county of Phillips; and that this case be, and it is hereby, remanded to the said county court; and the said county court is hereby instructed to allow and pay said claim, together with all the costs in and about this claim in this court expended." To reverse this adjudication, the county of Pulaski brought the matter before this court, by writ of error.

*Trapnall & Cocke*, for the plaintiff in error. The original application was made to the county of Pulaski, under the 205*th section* of the statute of Criminal Proceedings, which provides, that " in all penal or criminal cases, if the defendant shall be acquitted, (except in cases where the prosecutor shall be adjudged to pay costs), or, if convicted, shall not have property to pay the costs, the same shall be paid by the county;" referring, as may be fairly inferred, from a comparison

County of Pulaski *vs.* Irvin.

of the 204th, '5th, and '6th, sections, to the county in which the indictment was found.

The paramount objection to this claim, is, that the law, under which it is prosecuted, is in violation of the *9th section* of the *6th article* of the *constitution*, and appropriates, for public purposes, and divests the county, without its consent, of a fund, over which this section and article of the constitution has given it the exclusive control. It provides, that " there shall be established, in each county in the State, a court, to be holden by the justices of the peace, and called the county court, which shall have jurisdiction in all matters relating to county taxes, disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties."

This section constitutes the county court a local legislature, for each county, and gives it sole and exclusive authority to regulate county taxation, and to expend and appropriate the fund, when collected; and, in addition, directs the expenditure of the fund for county, and not for State, purposes; and, therefore, the act, so far as it invades the exclusive jurisdiction of the county court, and appropriates a fund for the public, that was designed, by the constitution, for the county, is unconstitutional and void.

*Ashley & Watkins*, contra. The question involved in this cause, is, has the General Assembly power to prescribe, by law, that the respective counties, in which State prosecutions originate, shall, in any event, pay the costs of these prosecutions? This resolves itself into the grave and serious question, whether the General Assembly has the power to control, by legislative enactment, the exercise of the jurisdiction vested by the constitution in county courts, " in all matters relating to county taxes, disbursements of money for county purposes, and in every other case, that may be necessary for the internal improvement and local concerns of the respective counties." *Cons. Ark. Art.* 6, *Sec.* 9.

In considering this question, I lay down the following propositions, as well settled: that the Federal Government can exercise no power, which is not clearly expressed in the constitution, or which is not ne-

cessarily implied, because it was created by the delegation of certain attributes of sovereignty, belonging to independent States: that, in construing the constitution of a State, a different rule is observed, for the Legislature of a State has the power to pass all laws, unless prohibited expressly, or by necessary implication, by the constitution, because the people possess all sovereign power, which may be expressed through their Legislature, unless restrained by the organic law.

By the constitution of this State, the powers of the government are divided into three distinct departments, each confided to a separate body of magistracy, to wit: those which are legislative, to one; those which are executive, to another; and those which are judicial, to another; and no person, or collection of persons, belonging to any one of these departments, shall exercise the powers belonging to either of the others, except in the instances thereinafter expressly directed, or permitted. *Cons. Ark. Art.* 3. The only such instance, which the constitution directs or permits, is in regard to impeachments. Under this clause in the constitution, it was held, in the case of the *State vs. Hutt*, on *quo warranto*, that the same person could not hold the office of State treasurer and justice of the peace, at the same time.

By the 9*th sec.* of the 6*th art.*, under the head of the Judicial Department, it is provided, that there shall be established, in each county of the State, a court, to be holden by the justices of the peace, and called the county court; which shall have jurisdiction in all matters relating to county taxes, disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties. This confers upon the county court the right to exercise a purely judicial function, and not any legislative power whatever. But if they possess the powers claimed for them in this instance, then are they legislative bodies, capable of passing all laws, general or special, "relating to county taxes, and disbursements of money for county purposes," independent of the General Assembly, and beyond the control of this court, which is invested by the constitution with a general superintending control over all inferior courts of law and equity. Instead of being judicial tribunals, they would be sovereignties. And what would it avail to sue the county, for any debt, if the county court pos-

sess the right to determine whether it shall be paid out of the funds of the county? Nothing. All demands against the county, would lay *in entreaty*, and not in suit, even for their liquidation.

It is believed that the principle involved in this case has already been decided in this court, in the case of *Woodruff, adm'r Gunn, ex parte*, in which a mandamus was ordered to be issued, to compel the county court to adjudicate a claim which it had once rejected. This court decided, that the only discretion vested in the county court, was, as to the *amount to be allowed on the claim of Gunn*, not as to whether the county was responsible for a claim of the character then presented. If a law, passed by the General Assembly, fixed the responsibility of the county, notwithstanding the decision of the county court, in that case, surely it has equal force in this.

If the question be doubtful, a construction ought not to be made of the constitution, which would lead to dangerous and absurd consequences, if not unhinge the operations of the government, while it admits of another safe, uniform, and practical construction.

After advisement, the following opinions were delivered:

*By* DICKINSON, J. This is a question which, both in its principle and in its consequences, involves the construction of our constitution, in regard to the powers that belong to the State, in her sovereign capacity; and, also, the constitutional jurisdiction of the county courts.

The matter in controversy is not easily determined, because the questions involved in its discussion possess inherent difficulty, in themselves; and this is greatly increased by the vagueness and uncertainty of the terms used in the constitution.

In the construction of grants of constitutional power, there is no rule which should be more closely adhered to, than the one laid down by Justice STORY, who declares, " that we should regard the constitution as a frame of laws, and not as ordinary statutes, and that the great end and object of all just interpretation are, to ascertain and determine the sovereign will of the people who formed the constitution; that the whole instrument must be taken together; and that its true intent and meaning can only be ascertained and defined from the great objects and purposes for which the government was instituted;

that any other construction will abridge great fundamental principles, which are supreme, and enlarge those which are restricted, beyond their true and just meaning."

I deem it proper to make this preliminary remark, before entering into a minute examination of the powers that belong to the State, as a sovereign, and those that appertain to the county courts.

The great axiom in the American form of government, is the separation and division of all political power among the three equal and co-ordinate departments of government; and that true and beneficial problem in the science of government was revealed by our revolution, and worked out and put in harmonious operation by the adoption of our federal and State constitutions. To deny this self-evident proposition, is to impeach the right of self-government, and to destroy the great preservative and constitutional principle that runs through our entire system of free states. This axiom is declared inviolate by our constitution, by which it is also declared, that the powers of the government of the State shall be divided into three distinct departments, each to be confided to a separate body of magistracy. Those which are legislative to one, those which are executive to another, and those which are judicial to a third; and, "that no person, or collection of persons, being of one of these departments, shall exercise any powers belonging to either of the others." It is clear, from this provision, that this was the great and important object that the convention had in view, in the formation of the constitution, and therefore the instrument must be construed in reference to it. They well knew that they could not be separated, or made independent of each other; for the action of the government depends upon the joint agency of them all. But, within the constitutional jurisdiction, each was supreme, except in cases expressly permitted or directed. Now, it is perfectly clear, that the clause in the constitution which confers jurisdiction upon the county courts "in all matters relating to county taxes, disbursement of money for county purposes, and in all other cases that might be necessary for their internal improvements or local concerns," must be considered by, and in reference to, the leading and governing principle of the constitution; and that the authority given to the justices of the peace, as a county court, must yield to, and be restricted by, this

County of Pulaski *vs.* Irvin.

principle, unless its exercise is in accordance with the true object and design of the convention. Again, it cannot be denied, that, if these clauses in the constitution were in direct contradiction to each other, the latter must give way to the former, because an inferior principle is intended to be engrafted upon the constitution, in opposition to a higher and more commanding provision, and one which constitutes the ingredients of civil liberty, and furnishes the only means and security by which the liberty of the country can be preserved or continued. This is the plain dictate of common sense, founded on experience and the nature of things, and strictly in accordance with all just rules of constitutional interpretation. There is a wide difference between the constitution of the United States and those of the State governments. The one is a delegation and enumeration of powers for national purposes and objects, and hence, its provisions are not to be extended beyond the true construction of the terms used, and their necessary implication with reference to the objects granted and intended to be secured. The constitution of a State government is wholly different. It is true, whatever it forbids, either to the State or to the people, cannot be done; and, thus far, it is like the constitution of the United States. Here the similitude stops; for, whatever is not forbidden by the constitution of the United States, or by the laws of Congress in pursuance of its authority, is retained as a residuary power to the State, as a matter of sovereign right, which she has the unquestionable authority to exercise in any manner she pleases, subject to the restrictions and limitations before stated. This results from the nature and character of civil government.

It would be impossible to make an enumeration of all the political rights that belong to sovereign States, or the natural privileges that belong to the people, or to give a definition that would include the whole extent of their power. Besides, it would be impeaching the will of the sovereign to do whatever she might think proper, within her constitutional orbit; and it would strip her of all her attributes of usefulness and improvement. The constitution of a State is, therefore, a mere declaration or bill of rights, imposed alike upon the different departments of government, and upon the citizens, and organizing its powers and franchises in such form as the sovereign will of

61

the people, in convention, deemed proper to impose. These premises, being established, will, I think, lead to just and proper conclusions.

The most distinguishing characteristic in the federal and State governments, is the power that belongs to the legislative department to impose taxation upon the people. There is a sensibility and a jealousy upon this subject, that may be regarded as furnishing the most effectual barrier against oppression and injustice. Representation and taxation, in their proper meaning, belong exclusively to the principles of a *free,* constitutional, and limited government; and this power, checked and controlled by the elective franchise, is not exerted partially or in local districts, but through the agency and sovereignty of the States, by uniform and impartial laws, and was the power that the people regarded, above all others, as constituting the shield of their protection. Liberty, they well knew, was in far more danger from attacks upon private property, than from any other cause; and hence, they guarded it upon that side with more solicitude and concern than any other.

These principles being established, it would seem to me to follow, that the State has certainly not entrusted her resources or her powers, on the subject of taxation, to any other department than the General Assembly, unless the grant in the constitution is so express and imperative as to forbid the idea that she ever intended to reserve this privilege solely to herself. And if it is doubtful how the power of taxation is distributed, then, as a governing principle of constitutional freedom, it necessarily belongs to the State, and she is authorized to exert it through the agency and instrumentality of her political or corporate communities. By keeping in view these principles, we shall be able to define the true constitutional jurisdiction of the several departments, and confine each to its appropriate sphere. The power of taxation, as has been justly said, is the greatest power that can be entrusted to a sovereign. In its exercise, all the great interests of society are involved, and the government is put into operation and supported by its resources or influence. As a general principle, the right of taxation is given, and belongs exclusively, to the legislative department. And there is great propriety and necessity in thus lodging it; for, as it is to be exercised for the benefit and security of the State, so the whole people of the State, through the means of the elective fran-

County of Pulaski *vs.* Irvin.

chise, should have the power of regulating and controlling its action. Is our constitution an exception to this universal rule? How is the power of taxation given, in the instrument? The county courts " shall have jurisdiction in all matters relating to county taxes, and disbursements of money for county purposes, and in every other case that may be necessary to the internal improvement and local concern of their respective counties." *Sec. 9, Art. 6, Cons.* These words must be all construed together, keeping in view the great object and purposes of the government. Admit that the term, jurisdiction over all matters relating to taxes for county purposes, if taken disconnected from the other portions of the constitution and the clauses of the sentence that follow it, might convey to the mind the idea that the power of taxation was given to that court; but, even then, I should deem that doubtful; for they are certainly neither appropriate nor sufficiently explicit terms to confer such a power. Their meaning is restrained by the latter part of the paragraph, which shows the object for which the jurisdiction was conferred; for that proves that the county court was intrusted with the mere collection and disbursement of the revenues of the county, and in *all other cases* in which she was concerned, by the appointment and prescription of the Legislature. Such is the extent of their powers. That they are to have and exercise jurisdiction *in all cases* coming within the provisions from which they derive their authority, is not controverted; and it is the duty of this Court to sustain and protect them in it. But the objects upon which that jurisdiction is to be exercised, must first be defined, and the line of distinction drawn by the General Assembly, between what shall be considered local or general concerns, and the internal improvements of the counties pointed out, as contradistinguished from those of the State; for what purposes county taxes may be assessed; the amount, mode, and manner of taxation; and the purposes for which such moneys may be disbursed. When this shall have been done, and a case is properly presented, in the form prescribed by law, then the jurisdiction attaches.

To assert the broad and naked proposition, that the county courts can act upon the subject either of taxation or disbursement, without any legislative control upon the subject, is, virtually and in effect, to

give to the most inferior tribunals in the State, powers expressly belonging to the General Assembly; and that, too, in a class of cases in which they might cause the most serious embarrassment to the State, by cutting off her revenue. As judges, they possess no such right, because it is the exercise of legislative authority. Where, I ask, is the grant giving them legislative power? Does the constitution regard them as a court, or as a legislature? or do they partake of a double character compounded of both, possessing the attributes of both judging and legislating. Is it to be presumed that so novel and extraordinary a power would have been conferred on an inferior tribunal of justice, without an express declaration of the constitution to that effect? To say that they, as judges alone, may declare what constitute county purposes, is to make the corporate and political bodies of the State uncontrollable upon the subject of county taxation, as well as disbursements, and all their incidents; for it cannot be contended that this, or any other court, could control them upon a mere question of fact, and that, too, upon a subject of which they have an exclusive, absolute jurisdiction. Suppose the General Assembly had passed no act whatever upon the subject, could the county court, upon its own mere will, have gone on and imposed burthens upon the property of her citizens? If it can arbitrarily declare the class of cases which shall be deemed local, or upon which the county funds shall be disbursed, regardless of the expression of the legislative will, it may, with equal propriety, levy and collect whatever tax it pleases, and upon such species of property as it may think proper to designate. If it can do all this, by what rule of uniformity are the county courts governed? for that bench, consisting of numerous judges, continually changing, at the will of the people by whom they are elected, must, then, having no rule for its government, be controlled in its judgment by the many circumstances acting upon the immediate interests of those who preside upon it. With a power undefined, unlimited, and unregulated, that which in one county would be deemed local, in another would be adjudged very differently. If the county court can, independent of the legislative will, levy taxes, and select all objects of expenditure, why can it not, as an incident of these powers, create an assessor, a treasurer, and collector? Such a power, I presume

would hardly be claimed for them. Grant, then, these uncontrolled powers of levying taxes, and they can, if they wish it, indirectly exclude the State from coming into the counties for her revenue, or at least so cripple her resources as to render them valueless. What right has a county to purchase property of any kind without the authority of law? If she can do this, she may erect court-houses and jails, and call them county property, and exclude the State from the use or occupation of them, and thereby paralyze the arm of justice. It is no answer to this proposition, to say there can be no motive to do such a thing. A failure to do so may be mere policy, while it can exercise the power at any time, to the great detriment of the general interests of the State and the citizens. I admit that, if the courts were given this power, absolutely and unquestionably, by the constitution, however dangerous such an arbitrary jurisdiction might be, no valid objection could be made to its exercise; but, as there is no such express grant in the instrument, according to my view of it, we are not warranted in clothing them with such unlicensed discretion. Had the convention intended to confer it upon them, would they not have declared, in express terms, that the county court should have authority to levy taxes upon the citizens of their counties, for county purposes, and disburse the same, without being subject to the control of the General Assembly? As they have not done so, is it not fair and reasonable to presume that no such power was ever intended to be conferred? Assume the position that an uncontrolled power is explicitly given to the county courts over county disbursements, and it must, of course, extend to the power of taxation. I cannot consider the grant as standing separate and alone, but as in reference only to other and higher objects of government. The question that I am considering, is one of power, and not of policy. Therefore, I am unable to bring my mind to the conviction that the convention ever intended to confer upon the most inferior part of the judiciary system the power of taxation and of disbursement, without reference to any legislative action. Admit the power, and all that the county courts have to do is, to declare any object local, and a fit subject for county taxation, and then they can, of course, (if the position the county court has assumed be correct), raise the levy to meet the expense; or, they may

refuse to make any improvements whatever, to the injury of other parts of the State. If this be true, how could taxation be uniform throughout the State, or a standard of equal valuation fixed upon the same species of property? And yet, this is one of the main and leading provisions of the constitution, upon the subject of taxation.

The members of the convention who framed the constitution, are supposed to have known the wants of the State, and to have provided adequate and sufficient means for the security and maintenance of the government. They, according to my opinion, proceeded upon the principle that the people were willing to intrust the General Assembly with the power of taxation; and, through the representatives of the whole State, have agreed that their property might be taxed for State purposes and county objects. They have provided the means for these two things, by intrusting the power to the Legislature, in the first instance, and requiring it to lay down a rule upon the subject, that should govern county courts. The constitution regards the county courts as political and corporate bodies, that are to be controlled and regulated in their discretion by the acts of the General Assembly, and not as independent of, and superior to, it. As political and corporate bodies, they are required to conform their action to the rule of the Legislature, and, in the exercise of their jurisdiction, to proceed in the mode and manner prescribed by law. That the State has the right to require them to defray the expenses of criminal prosecutions, originating in their respective districts, I have no doubt. As the sovereign, she may defray them out of any portion of her revenue that she may think proper. Whether the law she has passed in regard to the subject be ill advised or not, it does not belong to this Court to determine. Much may depend upon the vigilance of the police of a county, in preserving peace, good order, and quietness, and in suppressing vice and crime. And while, on the other hand, she is induced to exercise all her energies in preventing the commission of crime, she is warned that unnecessary and unwarrantable prosecutions may cause the expenditure of her public moneys, and increase the burthen of her citizens. The General Assembly having, under any state of case, authority to pass the laws, they must, in my opinion, remain in force until changed or modified by subsequent legislation.

County of Pulaski *vs.* Irvin.

Under the view I have taken of this case, it is not necessary for me to say, that I consider the acts of the General Assembly, regulating the disbursement of county funds, as imperative upon the county courts, and that they have no discretion but to obey them. In the present case, it cannot be contended but that the sheriff of Phillips county has acted in conformity with law, and that his account for official services, rendered in the case of the State *vs.* Douglass, is properly certified. It is equally clear, in my opinion, that the county of Pulaski, in which the prosecution was instituted, is bound to pay the costs. The judgment of the circuit court, however, must be reversed, as that court, upon certiorari, could take no other action upon the proceedings of the county court, than to quash or affirm them. The case must therefore be remanded, with instructions that the judgment of the county court be quashed.

*By* Lacy, J. I fully concur in opinion with my brother associate judge, that the act of the Legislature, prescribing the manner by which the costs in criminal prosecutions may be levied and collected, is strictly constitutional. Without attempting any thing like a regular or systematic argument in support of the proposition, I shall state, with as much brevity and explicitness as possible, some of the principal reasons that have led my mind to this conclusion.

The constitution enacts and ordains three distinct departments of power—legislative, judicial, and executive; and it declares that no person, or collection of persons, belonging to any one of these departments, shall exercise any powers belonging to another. This division and separation of all the powers of government, is the chief excellence and grand characteristic of our whole American system. It constitutes the very basis of the General and State Governments, and may be said to be the key-stone of the arch of constitutional liberty. To this fundamental provision in our system of government, all minor parts of the plan must yield. The whole structure of our political fabric was reared upon the principles, and rest upon the foundation, that the power of taxation belongs peculiarly and exclusively to the representatives of the people. It is, in its essence and character, emphatically a legislative power, and cannot, in the nature of things, appertain or

be assigned to judicial functions, with propriety or justice. It is the exercise of legislative will or discretion, and not the determination of judicial reason or judgment. This, then, being a primary principle in the formation and organization of our system, of course it must constitute a general and governing rule in the construction and interpretation of these instruments. And should there be any doubt or difficulty in ascertaining the precise boundaries of the three departments of power, in order to place the matter right, we should examine into the origin and objects of those separate jurisdictions, and assign to each the authority which the general scope and design of the system warrants. It is upon this principle, that it has been repeatedly held by the Supreme Court of the United States, that a constitution is not to be construed, or its meaning ascertained, like an ordinary grant or deed. Being the sovereign will of the people, in their highest legislative capacity, it becomes a charter of great political rights and powers, whose spirit and meaning are alone to be sought for and found in the principles it ordains and establishes. As the power of taxation belongs, as a matter of right and principle, to the legislative department, of course it must remain there, fixed and permanent, unless the constitution has given a portion of it to one of the other departments, by express grant or imperative implication. In the present instance, I do not think the construction of the constitution fair or just, that says the convention has conferred a large portion of the taxing power on the county courts, by the use of ambiguous or uncertain words. These courts, it is declared, "shall have jurisdiction in all matters relating to county taxes, the disbursement of money for county purposes, and in every case that may be necessary for the internal improvement and local concerns of their respective counties." Does a jurisdiction, conferred in matters relating to county taxes, and the disbursement of money for county purposes, necessarily grant, by a direct affirmation, or unavoidably imply, a legislative power in the county courts to determine the amount of taxes to be paid, and upon what articles to be raised, and in what manner they are to be levied? If this was the true intention and design of the constitution, why has it not declared it in express terms? Why did it not say that the county courts shall have the power of taxing the people for county purposes, both as to

County of Pulaski *vs.* Irvin.

the amount of charges and the articles assessed? The words used do not, then, by express grant, affirm any such power, nor do they, by intendment, imply any such meaning. To give to them any such construction, seems to me to pervert the literal and obvious meaning, and to put upon them an unauthorized and unwarrantable sense. The county courts are made judicial tribunals by the constitution, and when the term *"jurisdiction"* is used, it must be restricted to the kind and quantum of jurisdiction that belongs to them as courts. And this construction is strengthened and confirmed by the latter clause of the sentence which declares their jurisdiction shall extend to every case that may be necessary for the internal improvement and local concerns of the county. Now, what is the meaning of a legal or judicial jurisdiction, appertaining to a particular class of cases, if it is any thing more or less than that the sovereign power of the State may prescribe a rule of action for that jurisdiction, and that the county courts must act in conformity to that authority? To allow them to make a rule for their own government, and to disregard that of the supreme power, would be to invest them with legislative functions, while they were judicial officers, and acting in a judicial capacity. The language of the constitution is too loose and vague, to be taken as a grant of legislative power, or as conveying any other powers, other than those that these tribunals can exercise under the general and governing provisions of the instrument which makes them a constituent and integral portion of the judicial department. Construed by this rule, the terms become sufficiently certain, as far as their judicial powers or jurisdiction are concerned. One of the weightiest objections that can be urged against our constitution, is, that it is a code of laws in detail, rather than a bill of rights, or cardinal or general principles. The clause in question has indicated to the Legislature what powers might be exercised by the county courts, and the necessity that would devolve on them of creating laws and regulations, by which that jurisdiction might be exercised. Each county in the State is a mere public corporation; and such corporation is always subjected to the legislative power, where that power is not controlled by the constitution. They can have no vested rights of political power, except what may be conferred on them by the constitution. These inferior

magistrates (the aggregate of which make up the whole of this kind of corporate bodies of the State) must, as a fundamental axiom in the science of government, be subject to the sovereign will, and subordinate to the welfare of the whole, of which they form a part.    This arises from the fact that our constitution was intended to effect certain distinct purposes, declared on its face; to accomplish which there is, and must be, in the Legislature, a necessary and indispensable power to provide for the common defence, the common welfare, and the common benefit and improvement of the State, as one great whole. Thus, to the Legislature is confided a power of providing for an ample exercise of public justice throughout the State, while it would be absurd to suppose that this power was denied to them by the constitution. In the exercise of this indispensable power in the administration of remedial justice, the constituent parts of the body cannot interfere. If its exercise imposes charges on the county, or creates the necessity for county taxes, this is a mere result that flows from the exercise of an indisputable power; for the Legislature have an inherent power to provide for the common welfare and defence.    To say they cannot interfere with county charges, or create county taxes, or provide that particular expenses should be paid in the counties, is, in effect, to deny them the power of legislating for the common good: it is to deny that they can compel each county to keep and maintain good roads within its limits, for the common good: it is to deny that they can compel each county to erect suitable buildings for the current of justice to flow in: it is to deny that they can compel the counties to elect, and pay the salaries of, their probate and county judges, and thereby to give to each county the power of lopping off these branches of public justice.    If the Legislature cannot compel the counties to pay the cost of criminal prosecutions, they cannot compel them to furnish records and office books, or to do any solitary act by which public justice can be enforced within the limits of these corporations.    These consequences, in doubtful cases, go far to prove that it never could have been the intention or design of the convention to give the county courts such a power over the subject of taxation—a power of extreme delicacy, and of the most sovereign attributes, and one upon whose skilful exercise mainly depends our prosperity and happiness.    And

County of Pulaski vs. Irvin.

besides, if the power exist in this case, it is an anomaly in the whole structure of our system of government, and its improper exercise would defeat, to a ruinous extent, the soverеign will of the State; for all the county courts would have to do, would be first to designate the objects that they deemed county objects, and then assess, without legislative regulation, any amount of taxes, for county purposes or local concerns. The quantum of taxes would be a mere question of discretion, on their part, which no other power could limit or control.   Now, if the county courts possess the power contended for, then they are not amenable, according to the view I take of the case, to any other department of the government, under the constitution; for the power given to the supreme court to supervise and control the acts and proceedings of all inferior courts of law and equity, is strictly a judicial power, and cannot be made to embrace, either in terms or spirit, the supervision or control of any legislative power.   Now, unless we admit that the Legislature may tax the counties, for the administration of justice, although costs may thereby accrue to the people within these corporate districts, how can a county be made to maintain her own paupers, or pay her own officers or jurors, or what authority has the Legislature to enact laws on these subjects, when, in so doing, they cut off a branch of the county revenue?   And if no legislative power is conferred on the county court, and all its powers are subordinate to the general power of the Legislature, as far as the general welfare and public good are concerned in the administration of municipal justice, then it necessarily follows, according to my conception of the merits of this question, that the Legislature possesses the power to compel the counties to pay the costs of criminal prosecutions; and the act, therefore, upon that subject, I hold to be valid and constitutional.

*By* RINGO, C. J.   No question as to the jurisdiction of either this court, or the circuit court, over the case as presented by the record, has been made or argued at the bar; nor has any objection whatever been made as to the form of the proceeding; the parties having discussed the single question, whether the county of Pulaski is or is not legally bound to pay the demand, as exhibited by the defendant in error.   I shall, therefore, proceed at once to the consideration of this

question, and notice, in conclusion, such other questions only, presented by the record, as shall be deemed essential to a correct understanding of the case, or necessary to the making a legal disposition of it.

The solution of this question, if it involves nothing more than a just construction of the statutory provisions relating to the subject, would be comparatively simple and easy. I cannot, however, so regard it; because, according to the view which I take of the subject, it necessarily involves, to a certain extent, not only an exposition of the powers vested by the constitution in the county court, but also the authority of the Legislature to impose upon any county a legal obligation to pay the expenses and costs of legal prosecutions.

The *Constitution, Art.* 6, *sec.* 9, declares that " there shall be established, in each county in the State, a court, to be holden by the justices of the peace, and called the county court, which shall have jurisdiction in all matters relating to county taxes, disbursements of money for county purposes, and every other case that may be necessary to the internal improvements and local concerns of the respective counties." This language is both explicit and comprehensive; and the object appears to me to have been to create, in each county, a court, designate the officers by whom it should be holden, give to it a name, and define its powers. And, from the jurisdiction conferred, it is equally apparent, that it was the design of the convention to confide to the county court of the respective counties, the direction and control of all matters affecting only or principally the interests of those residing in the county, in regard to which it possesses the power of adjudicating every question which may arise. It is for this purpose the authorized agent of the inhabitants of the county, and the only organ by and through which their will, upon such subjects, can be legitimately made known, and their common interests provided for; that is, such objects as are strictly local, and intended only to benefit the inhabitants of the county, or in some manner promote their common interests. Over every subject of this character, the powers of the county court are plenary, and, in my opinion, only subject to such control as may be exercised over that tribunal by the Circuit and Supreme Courts. If such be the objects for which the county court was established, and such the powers with which it is invested by the con-

stitution, as to which, in my opinion, there can be no question, because they are within the express language of the provisions above quoted; and there is nothing in the constitution from which I could feel authorized to infer that such was not the design of those who framed that instrument; nor is there any thing in the nature or subject matters of the grant to warrant such conclusion. For what objects, then, are county taxes to be collected, and for what purposes may they legally be disbursed? I answer, for county objects and county purposes only. And, in respect to this conclusion, no doubt can, in my opinion, be reasonably indulged, because every provision contained in the section above quoted, refers exclusively to such matters as affect county interests only. Nor can there exist any doubt as to what tribunal is invested with the power of appropriating or disbursing the money collected on account of the county taxes, or in any manner raised for county purposes, because the constitution expressly provides, that the county court shall have jurisdiction in all matters relating to disbursements of money for county purposes. But here the question arises as to the power of the Court to determine whether any specific or stated object, the prosecution of which requires an expenditure of money, belongs to that class which are only designed to benefit, or in some manner affect the inhabitants of the county, or advance their local interests.

If the constitution has invested the county courts with this power, the Legislature cannot, according to any principle or rule of interpretation applicable to such instrument, possess or exercise it; not only upon the ground that the affirmative grant to the county court implies a limitation or negation of the power of the Legislature, in this respect, or because its existence, in any two departments of the government, would be incompatible with the provisions contained in the 3d article of the constitution, which distribute the powers of government into three distinct departments, and declares that each department shall " be confided to a separate body of magistracy, to wit: those which are legislative, to one; those which are executive, to another; those which are judicial, to another;" and, that " no person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances

hereinafter expressly directed or permitted;" but, also, because its exercise concurrently by two co-ordinate departments of the government, would be utterly impracticable, on account of the conflict of authority; each designating a different class of objects, to the prosecution or attainment of which, according to their respective views of policy or judgment of law, they would require the same money to be disbursed. And thus, in the absence of any tribunal clothed with power to control both, adjust the difference between them, and enforce its decision, nothing could be done in execution of the design of either.

And, if the county court has jurisdiction in all matters relating to disbursements of money for county purposes, as the constitution expressly declares it shall have, how can such jurisdiction be exercised, unless that tribunal possesses, also, the power of designating the objects for which the money shall be disbursed? I answer, that, without this power, its complete exercise would be impracticable. Suppose a proposition to disburse money belonging to the county, be submitted to that court; what is its first duty in adjudicating it? Surely it must be to determine whether it is demanded for any county purpose, because, it is upon the decision of this question that its jurisdiction or power to disburse the money is, by the constitution, made to depend. If this be decided in the affirmative, the power of directing the disbursement is vested in the court; but, if it be determined otherwise, the court has no jurisdiction of the matter; its jurisdiction being limited by the express terms of the grant, to matters of that character, as I conceive has been already shown. Now, for the purpose of testing this question more fully, suppose the Legislature to be possessed of the power of prescribing and designating by law, the objects and purposes to which, and to which only, the county funds shall be appropriated and disbursed, but divested, as it unquestionably is, of the power of disbursing the county funds; how could that power be exercised? Admit, for instance, that the Legislature determines that all prosecutions for criminal or penal offences against the State, instituted in a particular county, are matters of local concern to such county, and declares by law, that all costs and expenses incident thereto, shall be paid out of the county funds; but the county court, entertaining a different opinion in regard to the objects of such prosecutions, determines,

County of Pulaski *vs.* Irvin.

by its adjudications, that such prosecutions are not matters of local concern to the inhabitants of that county, but concern equally every member of the whole community, and thereupon refuses to disburse the county funds in payment of such demands: or, again, suppose the Legislature should determine that the erection of a bridge over any particular water course, or other specified place within the limits of any county particularly mentioned, shall be necessary to the internal improvement of such county, and shall be deemed a matter of local ' concern to it, and declare by law, that the county court shall cause such bridge to be erected, and the expenses incident thereto to be paid out of the county treasury, but, on the contrary, the county court determines and adjudges that the erection of such bridge is wholly unnecessary to her internal improvement, and of no benefit or advantage to the inhabitants of such county, and thereupon refuses to cause it to be erected, or disburse the county funds for that purpose; can the court, in either case, be compelled to disburse the county funds for such purpose? If so, their disbursement depends not upon the will or judgment of the county court, but upon that of the Legislature. And the court, in such case, can exercise no jurisdiction, either in regard to their disbursement, or the objects and purposes to which they shall be applied. In such cases, every thing is determined by the Legislature; and the court, being divested of all judgment in respect thereto, becomes simply the instrument by and through which the will and judgment of the Legislature is to be carried into execution. This, I apprehend, was not the design of the convention; nor is such a limitation of the powers of the county court at all compatible with the language used in defining its jurisdiction. In that language there is nothing obscure or ambiguous, either as to the extent of the powers conferred by it, or the objects it was designed to embrace. It defines both, in terms too perspicuous to admit of any serious question or doubt. And, as there is no repugnancy or conflict whatever between this and any other provision contained in the constitution, or the powers thereby conferred upon the county court, and those confided to any other tribunal or department of the government, by any provision contained in that instrument, I am unable to discover any ground upon which the power of the Legislature to appropriate the county funds,

or designate the particular objects to which they shall be applied, can be based. It will be remembered, also, that the constitution, *Art.* 6, *sec.* 15, has provided that there shall be two justices of the peace elected by the people themselves, for each township in the county, and, when the number of voters in any township exceeds one hundred, another justice of the peace may be elected for every fifty voters in addition thereto; and that these officers, so elected, shall constitute and hold the county court; thus forming a tribunal necessarily composed of men from every township in the county, who are presumed to have been elected for their capacity and fitness, not only to administer justice, but also to superintend and direct the common interest of the inhabitants of the county, as well as the local or particular interests of those residing in every part of it, who are supposed to understand their wants, and to know what will most effectually relieve them, and promote their common welfare and prosperity. Considerations of this character may have had, and probably did have, some influence upon the framers of the constitution, in inducing them to withhold from the Legislature the power to appropriate or make any disposition of the county taxes, and to confer it upon the county court. But, whether influenced by these or other motives, it appears to me, from a most careful and attentive consideration of the whole instrument and all its parts, to have been the design of the convention to confer upon the county courts the entire control and disposition of the county funds, as well as the control of all other matters of local concern to the respective counties; and of this power it cannot be divested by the Legislature, though the manner of its exercise may, in many respects, be regulated by law.

To determine whether a matter be within the jurisdiction of the county court, or otherwise, it is only necessary to ascertain whether the object to be accomplished is designed to operate principally, or altogether, upon the inhabitants of a single county, and will so operate, or, in other words, whether it is a matter of local concern or county purpose, in regard to which neither the State, or the great mass of the population of other counties, or other portions of the State, have any particular direct interest. If such be its operation, it is within the jurisdiction of the county court, and the county funds may, in the

County of Pulaski *vs.* Irvin.

discretion of that tribunal, be legally disbursed to accomplish it. But if such be not the effect and operation of the measure, the county court has no jurisdiction of it, and the money of the county cannot legally be appropriated or disbursed for the purpose of discharging any expenditure or charge which it may involve.

By applying these principles to the case under consideration, it will be readily perceived that the county of Pulaski is under no legal obligation to pay the demand in question. The prosecution of Douglass, like most other criminal prosecutions, was instituted and conducted by those acting exclusively under State authority. The crime, for which he was prosecuted, was an offence against the State, her dignity, and peace. It was a matter in which every member of the community is presumed, by law, to have an equal inerest. The injury complained of was not local, because it did not operate upon a majority of the inhabitants of Pulaski county, any more than it did upon those residing in every other part of the State. The penal laws of the State were supposed to have been disregarded and violated, the public peace and good order of society disturbed, the honor and dignity of the State assailed, and the supremacy of her laws derided, by an individual whose acts and example, if not repressed, would be likely to endanger society. And it was for the purpose of preventing the commission of other acts of similar character, by some other individuals, and to avoid their mischievous effects upon the interests of society generally, that the prosecution was instituted and carried on in the name and by the authority of the State.

If this be true—and that it is, I think cannot be questioned—it is manifest, beyond all controversy, that the proceeding was not instituted or prosecuted for any county purpose whatever; nor was it any matter of local interest or concern to the county of Pulaski, or any other single county in the State; and therefore, as no county court possessed any jurisdiction in the matter, or control over it, the funds raised for county purposes could not legally be disbursed in payment of the fees and expenses incident to its prosecution; and hence, there was no error in the judgment of the county court refusing to direct the payment of the demand in question, out of the county funds; but the circuit court erred in adjudicating it to be a legal demand against

63

the county of Pulaski, and that the county court was bound to allow and pay it out of the county funds. The reasons assigned by the county court may be, and in my judgment are, insufficient to justify the judgment therein rendered; yet, as the judgment itself is right, it cannot, on that account, be quashed or set aside. But *the judgment* of the circuit court, if it was right in substance, could not be maintained in the form in which it appears to have been rendered. The case was before that court, on and by virtue of a writ of certiorari; and, in such case, the law is believed to be well settled, that the circuit court could only adjudge that the judgment of the inferior court be quashed or affirmed. It possessed no power to remand the case to the inferior court for further proceedings, to be there had, nor to instruct the inferior court how to proceed in it, when it should be returned, as the circuit court, in this case, assumed to do. I am, therefore, after mature deliberation upon the whole case, satisfied that the judgment of the circuit court ought to be reversed, annulled, and set aside.

Such is my opinion in regard to the case, and upon every question, as I conceive, legitimately presented by the record, for adjudication; but the opinion of the Court covers more ground, and is made to involve and determine other questions of the first magnitude, which, notwithstanding I cannot regard them as proper subjects of adjudication in the present case, I consider it my duty to notice.

The opinion of the Court, as I understand it, assumes that there are certain great leading principles of government, vital to civil liberty, which pervade not only the organic structure of the government of the United States, but also of all the States in this Union, to which other provisions, of less importance, although inserted in the constitution, must yield, if they stand in opposition to, or in conflict with, each other. To the first class, the Court attaches the provision separating the powers of government into distinct departments, and confiding each to a separate body of magistrates or officers, and prohibiting such as are invested with any of the powers belonging to one department from exercising any of the powers belonging to either of the others. The power of taxation is also considered by the Court not only as of this class, but also as necessarily appertaining to the legislative department; but the jurisdiction and powers of the county

court, though granted by the constitution, are considered by the Court as being of the second class. These positions, as assumed by the Court, may be, and probably are, true in general, according to the theory and principles of American governments, and, if not contravened by any express provisions of the constitution, would form the governing rule, wherever the exertion of the minor powers granted by the constitution would conflict with the exercise of more important and commanding powers, vested, by the same instrument, in a different and distinct department of government. But the chief error, as I conceive, in this part of the opinion of the Court, consists, not in the principles asserted, but in their application; for the opinion of the Court, throughout, as it seems to me, proceeds upon the supposition that there is a conflict in the provisions of the constitution prescribing the jurisdiction and powers of the county court, and those relating to the separation of the powers of government and the powers of taxation, when, according to my understanding, there is no conflict whatever between them.

The *Constitution*, *Article* 3, ordains as follows: " *Sec.* 1. The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confined to a separate body of magistracy, to wit: those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. *Sec.* 2. No person nor collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter directed or permitted."

Is it not manifest, from the language here used in the conclusion of the second section, that the convention contemplated directing or permitting the exercise of some of the powers of government, belonging to one department, by persons or officers of another department, in more instances than one? To my mind it appears perfectly manifest. If such was not the design, why were the terms "instances hereinafter mentioned or permitted," used? Or if it was designed to prohibit every person, and every body of persons, entrusted with the exercise of powers belonging to one department, from exercising any of those belonging to a different department, for what purpose was the exception introduced? I can perceive none; and, therefore, I conclude that

it was the intention of the constitution to confer upon the officers of one department, in more than one instance, the exercise of powers which would naturally or appropriately belong to another. Has this been done? In my opinion it has, if any of the powers conferred upon the county court, would appropriately belong either to the executive or legislative departments of the government; otherwise it has not. The authority to try impeachments is vested in the Senate, by the 27*th sec.* of the *IV. Art.* of the constitution, and in that instance a body of persons belonging to the legislative department, is directed or permitted to exercise a certain specified portion of judicial power. And so far as I can understand the constitution, this is is the only instance in which it either permits or directs the exercise, by persons of one department, of any of the powers belonging to a different department, if such is not the case in regard to the county court. The opinion of the court, as I understand it, assumes that the power to levy taxes, and appropriate and disburse the money raised by taxation, is, in its nature, indivisible, and, according to the fundamental principles of all free republican governments, belongs exclusively to the legislative department. This is generally true in regard to the revenue of the State, and, unless restricted by the constitution, it is a power which the Legislature could doubtless exercise, without regard to the object for which the tax is to be levied, or the money raised thereby disbursed. But this power, like all others, was subject to the will of the convention, and, according to that will, could have been divided, restricted, regulated, or left entire in the Legislature. The proper inquiry, therefore, according to my view of the subject, is as to what was the will of the convention on the subject, as evidenced by the constitution. Is the power left entire in the Legislature? or is it regulated, restricted, or divested, in whole or in part, by the constitution? That its exercise is both regulated and restricted by that instrument, cannot, as I conceive, be questioned, because it expressly ordains, *Art. VII. sec.* 1, *title* "Revenue," that " all revenue shall be raised by taxation, to be fixed by law. *Sec.* 2. All property *subject* to *taxation*, shall be taxed according to its value; that value to be ascertained in such manner as the General Assembly shall direct; making the same equal and uniform throughout the State. No one species of property,

from which a tax may be collected, shall be taxed higher than another species of property of equal value: *Provided*, the General Assembly shall have power to tax merchants, hawkers, pedlers, and privileges, in such manner as may, from time to time, be prescribed by law: *And provided further*, that no other or greater amount of revenue shall at any time be levied, than required for the necessary expenses of the government, unless by a concurrence of both houses of the General Assembly. *Sec.* 3. No poll tax shall be assessed for other than county purposes. *Sec.* 4. No other or greater tax shall be levied on the productions or labor of the country, than may be required for expenses of inspection." Can the Legislature, consistently with the provisions here quoted, levy a higher or greater amount of State revenue on any one species of property, from which a tax may be collected, than on another species of property of equal value? Can they levy any tax on the productions or labor of the country, for any other object, or to any greater amount, than may be required to pay the expenses of inspection? These questions are sufficiently answered by the language of the constitution, just quoted. Again, the constitution, *Art. VII. sec.* 4, ordains, that "no money shall be drawn from the treasury, but in consequence of an appropriation by law, nor shall any appropriation of money for the support of an army, be made for a longer term than two years; and a regular statement and account of the receipts and expenditures of all public money, shall be published with the promulgation of the laws." What treasury is here spoken of ? Is it the State treasury, or the county treasury? Unquestionably the former; and from that treasury no money can be drawn, without an appropriation thereof by law. Is such the case in regard to the county treasury? There is no provision in the constitution, inhibiting the county court from disbursing any money in the county treasury, in its discretion, or requiring it to be disbursed in pursuance of law. Nor is there any provision, requiring the publication of an account of the receipts and expenditures of the county, as it requires in regard to the receipts and expenditures "of all public moneys." Is it not, therefore, perfectly manifest, that the convention designed to make, and did expressly make and establish, a marked and unequivocal line of separation, in respect to the power of levying taxes, and disbursing

money for county purposes, and the power of raising and appropriating the revenues of the State? To my mind it is. And it seems to me equally clear, that the first and second sections of Art. VII. of the constitution, under the title "Revenue," above quoted, as well as section 4 of the same article, were designed to apply, and do apply exclusively, to the revenues of the State, and have no relation or application, in any respect whatever, to the levying of county taxes, or the appropriation or disbursement of money for county purposes. If it was the design of the convention, that the Legislature should possess the same power over both the State revenue and county taxes, is it reasonable to suppose that the disbursement of the former, without the authority of law, that is, without an act of the Legislature directing it, would have been expressly inhibited, and the publication of the receipts and expenditures thereof imperatively enjoined, and no similar provisions have been made in regard to the latter? In my opinion, it is not; and therefore, it appears to me, in considering the whole frame of government, as modeled by the constitution, and comparing every part thereof one with another, to have been obviously the design and object of the convention, that the Legislature should control the whole subject of the revenue of the State, subject only to the regulations, restrictions, and limitations, provided by the constitution, but shall possess no control whatever over the subject of county taxes, in respect to the amount thereof to be raised, or the objects for which it should be expended or disbursed; this power being, as I conceive, expressly granted to the county court. But the terms of the grant, it is said, do not necessarily confer this power upon the county court, or restrict its exercise by the Legislature. The solution of this question depends upon the import or signification of the term "jurisdiction," as used in the grant. In the ordinary or common signification of the term, it signifies " the power to determine or decide," in regard to the matter or subject specified; and I can perceive nothing in the constitution, to justify the conclusion that the convention attributed to it any other or different meaning, or intended to express, by its use here, any thing other than this, or different from it. And if I am not mistaken in this, there can be no doubt, I think, as to the design of the convention to invest the county court with this power. But again, it is said this

would be a grant of legislative power, and it is not to be presumed that the convention intended to invest a tribunal so inferior as the court, with the power of legislation over a subject so important as the imposition of taxes, and the appropriation of the money thereby raised, which, as it is said, might be so exercised as to embarrass the operations of the government, and disturb its harmonious action. Are these positions true? What act of legislation must the court exercise in the execution of any power claimed for it? Does the act of determining what amount of money is needed, or shall be raised, for county purposes, partake of the character of a legislative act? So, in regard to deciding what improvements, confined to the limits of the county, are necessary, or most conducive to the convenience and general welfare of its inhabitants. In neither case does the act, as I conceive, even savor of the exercise of legislative power. It prescribes no rule of conduct for any one; in itself it neither commands nor forbids any thing to be done, but decides simply what internal improvement shall be made, or matters of local concern accomplished, the sum of money necessary to be raised and expended in their execution, and then levies a tax commensurate to these objects. In determining these questions, the county court exercises both judgment and discretion, but it partakes, as I conceive, more of the judicial than the legislative character; but if the converse was true, the power might, nevertheless, be exercised; according to my view of the subject, being expressly conferred by the constitution. And as it is strictly a question of power, it could be no objection to its exercise, if it included the power also of even determining as to the subjects of taxation; that is, whether it should be a direct or poll tax, or tax upon property. The constitution imperatively forbids a poll tax being levied for other than county purposes. This implies a power somewhere existing, to levy such tax for county purposes. May it not have been the design of the convention, that the county taxes should be assessed upon the polls, exclusively? Upon this point, I express no opinion; yet if such was the design, it would, I think, free the subject of much seeming difficulty, and remove many of the objections, urged in the opinion of the court, against the exercise of the power by the county court.

Another principle asserted by the court, as it seems to me, is that

County of Pulaski *vs.* Irvin.

the Legislature can, by law, make local, things not so in their nature, and county purposes of things not so in their nature, but upon which the constitution itself has stamped a different character. This last remark is intended to apply, especially, to the act of the Legislature imposing upon the county the payment of costs, in certain criminal and penal prosecutions, which the opinion of this court sustains as valid, and binding upon the counties. The nature and character of such prosecutions have, I trust, been sufficiently shown in a former part of this opinion, and I will only remark, in addition, that the constitution itself confides the whole subject of their prosecution to State officers, and State authority, in no way subject to the jurisdiction or control of the counties in which they are carried on. In regard to the general principle, I will simply state a case or two, in illustration, the application of which will, as I conceive, be readily seen. Suppose an insurrection of slaves in the county of Chicot, to suppress which the militia are called out, and organized into a regular military force, and continued in service until the expenses for their maintenances and pay amount to $20,000, and the Legislature should pass a law, declaring that these expenses should be borne and paid by the county of Chicot, could that county be coerced to levy a tax, and pay the demand out of the treasury? Again, suppose the Legislature, in consideration of the advantages derived by the inhabitants of Pulaski county, from the location of the seat of government therein, should consider it just and reasonable that this county alone should pay the expenses of erecting and keeping in repair a State-house, or other buildings, for the use and accommodation of the General Assembly, and pass a law requiring the expenses thereof to be paid by the county of Pulaski, could such a law be enforced, and the county coerced to pay such demands? In my opinion, such legislation, if not repugnant to the express letter of the constitution, is contrary to the whole spirit and design thereof, and void. And in principle I can perceive no difference between the instances here put, and the act of the Legislature, sustained by the opinion of the court in this case. Now the court, if I understand its opinion, admits that county taxes can only be disbursed for county purposes, and in this we all agree; but the court holds that the power of determining what shall be deemed and adjudged to be county pur-

poses, within the meaning of the constitution, belongs exclusively to the Legislature, while, on the contrary, I consider it as belonging to the county court, subject only to the supervision or revision of the circuit and supreme courts, in like manner as all other adjudications of the county court. And the question of jurisdiction, or power, is to be determined not from any act of the Legislature, but from the nature of the thing in question, and its purpose. If it relates to county taxes, and the disbursement of money for county purposes, and is local in its character, the county court, under the grant in the constitution, possesses power to adjudicate it; if it has not these characteristics, that court has no power over it, and none can be conferred by the Legislature. It is competent, however, for that department to prescribe, by law, the form, order, and manner of proceeding, in the business of that court, as well as all other courts in the State.

This tribunal (the county court) is characterized, in the opinion of the court, as novel and extraordinary, if, indeed, it is invested with such powers as I have supposed; and from this consideration the conclusion is deduced, that it never was designed to grant such powers to it; such grant being, as it is argued, inconsistent with the principles of the government, which deny the power to levy taxes, without the consent of the taxed. However true this may be, as an abstract principle, I deem it unnecessary to inquire, as it can have no application here, for two reasons: first, because the people, from whom the tax is to be raised, have, through their representatives in the convention, assented to the grant investing the court with such powers; and second, because those upon whom the burthen must rest, have, under the provisions of the constitution itself, a much more full and immediate representation in the county court, than they have in the Legislature. To illustrate this question, as to the representation of the people in the two bodies, take the county of Pulaski. In the General Assembly, this county has three representatives and one senator. In the county court, she must have twelve at least, for there are six townships in the county, and each township must have two justices of the peace, who are elected by the same persons, and for the same term of time, as the members of the General Assembly, and each of whom has a constitutional right to sit in the county court. Is it to be presumed that these

64

representatives are less intelligent, less honest, less patriotic, or less informed as to the general welfare and local interests and necessities of the inhabitants of the county, than their representatives in the Legislature? Such presumption, it seems to me, would be alike strained and unauthorized. And this very fact, that the people, chargeable with the payment of the taxes, are all so fully and directly represented in the county court, by persons necessarily residing in every township in the county, taken in connection with the plain, unambiguous, and comprehensive language of the grant, furnishes to my mind a most potent evidence, that it was the design of the convention to confer on the court the power in question.

I agree with the opinion of the court, that it was the design of the statute to charge the county, where the prosecution was instituted, with the payment of the costs.

Judgment reversed.